May it please the Court, Pierce. Ms. Hearns' first issue is the one that potentially can give her the most relief, so I'd like to address that issue some more. We're arguing that the government proceeded on a theory that the financial institution at issue was a mortgage lending institution, which was not statutorily defined that way at the time of her conduct. The government says no, we're not. We're charging her relying on the insured deposit institution financial definition. The government admits in its brief that both of those allegations are in the indictment. Page 10 of the government's brief, page 12, I'm just going to read a little bit from page 12. Hearns is correct that the indictment identified Countrywide Bank as a residential mortgage lender, but the indictment also described Countrywide as a financial institution because its deposits were insured by the FDIC. The indictment performs two functions. One is to provide notice to the defendant. The other one, a quote here from a case, limits the defendant's jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge, obviously the grand jury. The authority for that is 361 U.S. 212 218. So the question here is, and our argument is, when the AUSA appeared in front of the grand jury to sell this case, did he sell it under a residential mortgage theory or under an FDIC insurative theory? There was no motion to dismiss, right? On a not statutorily covered bank victim theory. Not that I'm aware of. And then there was no objection to the jury charge as given. That's correct. And no Rule 33 motion. So this is reviewed at best for plea and error. Is that correct? Well, if the issue is an amended, that the jury instructions effectively amended the indictment, then I think it's reversible per se. But technically you're right, that's plea and error. But I think that's always plea and error if the court were to find that. So you're saying that it was legally defective on the charge given by the district judge, not objected to, which implied that it, this could be a statute, countrywide, could be statutorily covered as a mortgage lender. Is that, that's, that's your legal argument? That's our third issue. Okay. Your second issue is that. I'm sorry. That's the second issue. The third issue is a matter of laws. No, no, no. I'm not getting to the second thing. I'm trying to understand your objection to the jury charge. Is it because you say countrywide was told, the jury was told they could find that they're a statutorily covered bank because they're a mortgage lender, but that would be ex post facto? That's one argument, right? The jury charge said nothing whatsoever about residential mortgage lender. Okay. And that couldn't be a theory, right, given the timing? Well, my, my first, the argument in our initial brief was because there was nothing in the jury charge about residential mortgage lender, then they essentially amended the indictment. The fifth element was described if it's federally insured. If country, and so that was charged countrywide, owned by BAC, federally insured. That's correct. And that is a statutorily correct. That is, yes, sir. So your argument is just there was no proof that BAC owned. In fact, the opposite was said. Is that essentially your argument? It is as to the amended indictment, but we're still, I'm still arguing that the government went to the grand jury and presented this case as a residential mortgage case, not as a FDIC or insured case. I mean, maybe I'm wrong legally, but why do we care what they presented to the grand jury? You had an indictment in front of you that was statutorily correct. So you have a charge that aligns with proof. Then jury gets told, you understand where I'm going? Yes, sir. So where's the, where's the rule? There are two Supreme Court cases that I think are almost on all fours with this, and I'd like, I think they're instructive. I'll try to go over them as quick as I can. One is the Ex Parte Bain, 121 U.S. 1. The other is McNally v. United States, 483 U.S. 350. Bain obviously is an old case. It's an 1887 case, and it's been overruled to the extent that it held that a defective indictment deprives the trial court jurisdiction. But other than that, it's still, still good law. The indictment alleged bank fraud. One count, it alleged that Mr. Bain made a false report to an agent, to a comptroller. The statute that he was charged under included agent, did not include comptroller. So the government filed a motion to have the comptroller language stricken from the indictment, was granted, and it's stricken a surplus. This is Bain, 1887? That's correct. I'm just going to jump you back to what you had here. Countrywide Bank, a wholly owned subsidiary of BAC, a financial institution insured by FDIC. Where's the legal error in that instruction? Why isn't that the, the exactly correct, a financial institution insured by FDIC? Okay. Are you reading from the, the jury instruction that says the, that I'm reading from the fifth element. Jury's told you got to find, beyond a reasonable doubt, that the bank that's allegedly defrauded, countrywide, has to have had the interstate connection, which is that, quote, it's a financial institution insured by FDIC. As to that part of the charge, there is no problem. Okay. What's your problem? What's the, where were they mistakenly, what's the language that they were told they had to find that you say is an error of law? You're talking about as to the charge? Yeah. Okay. They had to find that Countrywide Bank was owned by Bank of America. There was no, there was no... But that's just surplusage. Well, that would be your decision, but I'm saying that, I'm saying that that's a problem with the charge. I agree. That's a problem in terms of variance from proof, because they never proved at the time of the crime that it was. It's a variance. They didn't prove that it was owned and they didn't prove that it was insured. That they didn't prove that country, that, that Bank of America was FDIC insured and they didn't prove it was owned. Okay. The other case is McNally. Okay. Well, this is what, this is what the Supreme Court said. And again, I'm back to the grand jury here. Okay. It is not impossible nor very improbable that the grand jury look mainly to the comptroller as the party whom the prisoner intended to deceive by the report, which was made upon his requisition and returned directly to him. How can the court say that there may not have been more than one of the jurors who found this indictment, who is satisfied that the false report was made to see the comptroller, but was not convinced that it was made to deceive anybody else? And how can it be said with these words stricken out, it is the indictment which was found by the grand jury. Now there's a 1980 case that provides some interpretive commentary to, to Mac, to Bain. It's a 626 F 2nd, 264, 268 says this. It's talking about Bain here. The case has been submitted to a pettit jury under the original indictment and a guilty verdict had been returned. It could not have been sustained because the court could not have known whether the jury believed the comptroller had been deceived, not a crime or whether the agent had been misled, which was a crime. And that's what we have here. I mean, obviously if the jury, if the grand jury was sold and this could be solved, I don't have a transcript of the grand jury proceedings, but obviously that could solve, that could solve it. If, if, if this court were to look at that, but if what I'm going to, where I'm going with this is based on, and I'm going to assume that the, the AUSA made the same pitch to the pettit jury that he made to the grand jury. And if that's true, then this was sold to the grand jury on conduct that didn't constitute a crime at the time. That's a wire fraud case. You can go into McNally, but the relevant conduct does concern me. And so what's Going to the sentencing now? What exactly is your relevant conduct argument? And is it also subject to plain error review? I made three responses to the, to the government's argument. And, and first of all, I don't believe it is subject to plain error review. And in both my I believe error was preserved. Obviously that's not the ultimate call to make, but I don't believe it is reviewable for plain error. When you say error, you mean factual, that there wasn't a factual basis to find this to be relevant conduct or legal that the district court and the PSR identified the wrong relevant conduct subsection? Well, the PSR, you know, two relevant conduct, relevant conduct subsections. The, the one that PSR used was the one which appeared to be relied upon by the We have no problem with that. We, we don't have any revision. So that's the one that everybody went with. And that one required a finding that it, that the conduct incurred in preparation for, and I can't remember the other two prongs, but none of those were fulfilled as to any of these extra nine properties. Okay? That's argument number one. The second argument was that, let's see if I can remember. A2, that it can precede the timeframe of the charge conduct if it's common participants in the scheme. There's a second, okay. The, the government's argument in the brief was, okay, what was all on A2, not on A1. Okay. And so I'm saying, well, at trial, we went on A1. You can't change horses to A2. And I cited a second circuit case, and there's, I think, a third circuit case that's contrary to this. It's in the footnote. But second circuit says that that language of in preparation for yada yada yada goes also with A2. And again, for the same reasons that I argued in the original brief, none of that applies to any of these nine properties. The last response I made in my reply brief to the government's argument was, okay, let's assume that you can go under A2. There are still, and I don't remember how many properties now, that still weren't, I mean, they were just dumped in there. There's no, there was no connection made at trial. There was no connection made at sentencing by any witness called by the government to connect any of these properties. I say not any. There were, there were several properties that, that were obviously, and I talked about this in reply brief, were mentioned at trial. And if you went under A2, yes, those could be considered irrelevant conduct based on trial evidence. Did you dispute to the district court any of the nine properties the PSR listed? Did you dispute the accuracy of those properties? What the, what the defense attorney said was in the pre-sentence report, we believe, we believe that the amount of losses, the $180,000 or whatever, associated with the indicted property. We believe that's what we should be held accountable for. We don't believe we should be held . . . Right. You were complaining about the restitution, right? Correct. As opposed to the . . . Well . . . But did you ever . . . I can't remember, I can't remember whether we were, and I should, I should know this, but I can't remember whether the complaint was only about restitution or about the offense level, because offense level obviously is calculated partially based on the amount of loss, too. And I can't remember whether the argument, whether the argument was one or both. Am I correct that of the nine other properties, six were never mentioned anywhere? I want to say six. I can't, I should, I should have remembered that. There were, I think, I've lumped them together, it's five or six. I mean, the statement I think I made in my reply brief was these were basically, looked like they were pulled out of thin air and just put in the pre-sentence report, with nothing at trial that would connect these properties to Ms. Hearn's conduct, or even that they were illegal, and nothing, I mean, if the government had called a witness, and I cited a bunch of cases in there, attempted to, that talk about, okay, this is what you need if you're going to connect these up. These cases, on the other hand, are not enough to connect them to that proposition. And there's just nothing there to connect those to the amount of loss, which affects her base offense level and her total offense level, and the judge sentenced her at the low end of the advisory guidelines. But that objection was never made at sentencing. There was no objection to including these additional six properties or nine properties in the PSR. Not in those words. Not in those words. Well, those are the words that count, because the district judge has to be put on notice that there's a problem with it, or that there's an objection, so it can be cured, or investigated, or supported, or denied. The defense attorney never said these other nine properties were never connected to the property by testimony or by a sentencing witness. If that's what you're saying, you're right. Paragraph nine gives a little threadbare description as to how they might be. Beg your pardon? In the PSR, the probation, that paragraph nine. Well, I don't remember paragraph nine. The PSR proceeded on A-2. On A-1. Excuse me, A-1. And the government agreed with A-1. And we remanded. Beg your pardon? I guess this is a question about harmlessness. If you even got, if you got a remand from us, her defense always seemed to acknowledge that the country was defrauded. It was she just said the other people were the con people. She was duped. So you go back, the judge heard four days of trial, the judge heard her cross say, yeah, all these other ones happened. Is it just a matter of the judge? The judge never heard all of those other ones happen. But in her case. And if you proceed under A-2 instead of A-1, arguably there's enough there that you can add some of those as relevant conduct. And I've conceded that under my, I think my second response in the reply brief. All right. Thank you, sir. You've saved some rebuttal time. Mr. Pierce. Mr. Pierce, would you mind starting where we left off there on the amount of loss that should or shouldn't be included and address the six properties that were never mentioned? Certainly, Your Honor. As a, as a, just a brief beginning to that, we strongly believe that he has waived that, that argument by failing to specifically object factually to her involvement in those properties. And as Judge Higginson pointed out, her defense never was that she wasn't involved. But it is true that. As you mentioned, I want to get to Judge Wiener's question, but you just offered that. Could you read for me, he made this PSR objection, loss has to equal restitution. That wouldn't go to this evidentiary issue. That's correct. And he gets to sentencing and the court says, any objection? Oh, I see there is one. He says, yeah, I don't, I think the loss amounts too much. Read for me, you probably know it off your head. What does the district court say? Because the district court's response to me seemed to understand it was a broader objection. So just read what the district court said. Okay. I don't have it off the top of my head, but I do have it here. The objection is overruled because the loss amount, and that has to do with the amount attributable to, and it's sort of. Well, keep reading because that's exactly his argument now. It's not attributable. I believe it's a conspiracy. So the entire conspiracy was foreseeable to her. Clearly, those other transactions were foreseeable to her. So I think it was correctly calculated. And then it goes on. The restitution. But, Your Honor, how is that not objecting to foreseeability and attributability instead of just a narrow loss equals restitution? Well, and then the court goes on to talk about restitution. That's. Isn't that preserving it? We don't think so, and here's why. The argument was the objection was about restitution, and then the PSR or the probation office makes its response citing relevant conduct. The defense counsel gets up, again emphasizes this is about restitution. The government responds by saying restitution and amount of loss are separate. We're looking at what the court did, and the court says, hey, there's a conspiracy. It was all foreseeable. It's attributable to her. And he's saying on appeal that's wrong. And the court is, and the reason the court is doing that is to say legally there is a difference between what can be considered as a matter of relevant conduct and what can be considered for restitution. Judge, my last question, I don't want to put words, is go ahead and show us how it is attributable. What are the, how do you connect the six specifically to the trial evidence? Certainly. Now we can get back to you. It's true. There was nothing at the trial about those properties. The only evidence that comes up is in paragraph 9 of the initial PSR, paragraph 10 of the revised PSR. And that paragraph says the government has supplied to the probation officer records that indicate that the defendant has been involved in other transactions with the other co-conspirators, King, Gumayor, and more, using the same scheme, the down payment assistance scheme. Were those records put into evidence? They were not put into evidence at trial. But that's, excuse me, at trial or at sentencing. But that's our point here, which is that if the defendant had objected to paragraph 10 or paragraph 9 in the early PSR, or even when she got up or, excuse me, when her counsel got up at sentencing and said our objection is to the fact that these transactions took place or that I was involved with them, then the government can put those records on or can put a witness on. The Rule 32 makes quite clear that a court can adopt undisputed portions of the PSR. And if the defendant doesn't get up and say, I'm objecting to this information that is clearly identified in the PSR, as Judge Clement mentioned, the court's not put on notice, the government's not put on notice, that it needs to actually prove these things up. If we read that whole sentencing transcript, can we doubt that there was a dispute about at least those six properties that were never mentioned? I think that it is impossible to read that one sentence alone. But I still think, yes, this Court can doubt that that was a dispute. I mean, even up here today, counsel has said, no, there was never any dispute about her involvement in those transactions. There was never any evidence that she was, other than the PSR. That is absolutely correct, Judge Weiner. But the point is, that is evidence. And the point of having to object specifically to that type of evidence is what requires, then, the government to shoulder its preponderance of the evidence burden and say, in fact, what is here in the PSR, we can call a case agent, we can bring in the records and put those on. But by not doing that, the defendant says, sort of indicates that her objection was to the legal theory, that I should only be held responsible for loss commensurate with my count of conviction. Part of the problem with this record, and it's in all these sentencing records, even if we were to say there's no evidentiary objection and it was only a legal theory objection, it seems pretty compelling that probation and then the district court adopting probation went on a wrong legal theory, the A-1 subsection. Because you're not disputing these nine things are out of the time frame of the indictment, right? That's correct, yeah. We have legal error, even if we were to agree with you, that we can't reach evidentiary error. We would push back a little bit as to that. And also, in doing that, to respond to an argument that the defense makes, which is that the government made the argument, albeit obliquely, that this was an A-2 relevant conduct. When the government gets up at sentencing to respond to the defendant's objection, first of all says there's a difference between restitution and amount of loss, which is really what the issue was. I'm not asking if the government waived it. We know what the probation recommended, and we know the district court adopted the PSR. So we know the district court only assessed this under A-1. I don't think that's right, Judge Siginson, because what the government says is it's the same course of conduct. And then the government and then the district court says, you know, I overrule your objection. I think the court can also read that as saying I agree with the government's relevant conduct under A-2. The record is not crystal clear. I think we all can agree on that, but — If it is A-1, are you acknowledging that A-1 has to be timeframe relevant conduct? I'm not sure it's — that — I don't know the answer about the timeframe. I think it's harder to make the argument that it's in preparation for the offense. I think it's part of the same course and conduct and scheme. Also, just to briefly respond, I understand Defendant's reply brief to suggest that in proving up A-2, you also have to prove up that sort of course of preparation citing the Second Circuit Fitzgerald case. That can't be correct, and that's not what this Court has followed in a number of cases, Ben's one that's cited in the briefing, Hinojosa, the Carlos Hinojosa case. And the Second Circuit itself hasn't followed that particular language. Most courts, this Court and the Second Circuit, see A-1 and A-2 as discrete ways to prove up relevant conduct. And for purposes of this appeal, yes, we're conceding that we cannot establish under A-1 that it was relevant conduct. So that's not our theory. Our theory is A-2, that's the argument we made below, albeit not one, in our view, that the Defendant preserved. So an A-1 error would be harmless? Is that your point? Well, I'm not sure we actually can make the harmless argument. It would be harmless because we think ultimately it was an A-2. It was correct under A-2. If this Court goes all the way back and says, well, they needed to — the government needed to actually prove up the evidentiary record, which again we think is incorrect because it wasn't preserved, we agree that the only evidence there was through the PSR. And that would change the loss amount, and I don't think we can make a harmless error argument as to that. But we strongly believe A-2 is the correct way to read it, that the government — excuse me, that the Defendant failed to preserve her objection to the evidentiary basis and involvement in those transactions. I'm just curious, and if you don't have an answer, it may go outside the record, but why in a conspiracy case would the government charge just one sort of fraud moment? If it was all common scheme and plan, why wouldn't you say on or about earliest date to then, you wouldn't have any of this problem? There is nothing in the record. I also don't know. But what I can add is that the earlier versions of the indictment, this was a — did charge the April transactions. Now, the April, we've been talking about six transactions. There were ten altogether. One is the count of conviction. Three were, in fact, amply established at trial and were part of the earlier indictment. These are three transactions in April 2008. One, other Brookmeadow property, and others I can't recall off the top of my head. Those four together, count of conviction plus the three that were proved up at trial, establish a loss amount of $418,000. That doesn't tip over the $550,000 threshold that justifies the enhancement as it is now imposed. That's why these other six matter for purposes of this — The preceding indictment reduced the conspiracy timeframe, but then you went and proofed it up anyway. Yes, under essentially 404B theory saying that her involvement was with the same other accomplices, different particular investors, same victims. So that's why it was proved up at trial, but was not included in the indictment that was operative at the time of the trial. If there are no other questions on relevant conduct, I'm happy to then also address some of the first two arguments as to the residential mortgage lender. In our view, the use of that phrase is — neither gives rise to an ex post facto violation or a constructive amendment of the indictment. And in fact, there's essentially tension between the defendant's two arguments. On the one hand, I understand the defendant to be faulting the inclusion of that phrase in the indictment, and then its exclusion from the jury charge. And the way to read that, I think as Judge Higginson was indicating, is that that wasn't a theory that the government was relying on. The theory on which the government relied is that this is a financial institution insured by the FDIC. That's what the proof at trial establishes. The proof at trial establishes that at the time of the offense conduct in June of 2008, that Countrywide was insured by FDIC, and so therefore qualified as a financial institution under the — with BAC owner. That's correct. And could be modified as the only insured. That would get you into a problem, right? Well, we agree it's incorrect. And I think that was the government's fault, which probably flowed from the fact that the conduct at issue in the trial was June of 2008. Evidence also at trial showed that in July of 2008, the month after, BAC acquired Countrywide. So there was some basis for it. But it's still a mistake in our view. But it's at most a harmless variance, because again, as I believe Your Honor, Judge Higginson indicated, you still have at core Countrywide being defrauded and the basis for its inclusion as a financial institution being that as a FDIC insured. But it's also — if not even that, you can even take this on a Nader — the Supreme Court's Nader harmless error theory, which is that assume that there was nothing in the jury charge about a financial institution. It was undisputed at trial that Countrywide was a financial institution because of FDIC insurance at the time of June in 2008. That was testimony from an employee then of Countrywide, later of Bank of America. That's — That was what was alleged in the indictment. And exactly. And that matched precisely with the actual allegation in the indictment. So that is, again, what shows that there is — this is something that trips over no-harmlessness problems as to the jury charge itself. Unless there's specific questions on either of these issues, I'm happy to yield the balance of my time to the Court. We'll take it. Thank you. Thank you. Just a response to sentencing to begin with. I did read my brief, which is always a good thing to do before you come here. It was — relevant conduct was the objection. It was not about restitution. I mean, in the government — The objection to the PSR was correct, only about restitution equaling loss. But you're saying the objection at sentencing was broader? Is that what you're saying?  Here it is. This is from pages 1408 and 1409 of the record. And the Court says an objection was filed. Do you wish to address that? Yes, Your Honor. This is the sentencing. We would ask that the base level be reduced to 17. That's not restitution. That's offense level. We would base that on the fact that Ms. Hearns was convicted for the charge on 4006 Brownstone property. The loss amount was approximately $180,000. We would ask that that be used to determine the calculation. So the AUSA then responds, and I won't read it all here, but he uses the term relevant conduct about four different times, and the judge overrules it. So in response to Judge Clement's point that the point of an objection is to put the trial court on notice, the trial court was on notice that this was a relevant conduct objection, I think, based on this little exchange right here. Was there ever an objection to the accuracy of those amounts for the nine other transactions? I can't argue that it was other than what I just read. I mean, I'm arguing that's enough. So the judge was entitled to rely on the correctness of the . . . I'm sorry? The judge was allowed to rely on the correctness of the PSR. Right. And I don't know, you know, whether that's enough, obviously . . . Aren't there two things there, counsel? One is the correctness of the PSR in the amount of each loss of ten properties, but not, as no one ever mentioned, the other six as relevant conduct. Well, I'm . . . certainly they never . . . there's no evidence, I'm arguing, there's no evidence anywhere of the other six. I'm arguing that if you're to plain error or whether it's preserved, there's nothing I can say other than what I've already said. If you can go back and say, well, we can proceed under A2, even though they argued A1, then you can use the evidence that was adduced at trial and you can feed some of these other properties in because they were mentioned under 404B, and I'll concede that. If, on the other hand, the government's restricted . . . and the government has the burden here. I mean, I'm stating the obvious there, but it's not Ms. Hearn's job to come in and demonstrate why all nine of these didn't, shouldn't count. It's the government's job to prove they should be part of relevant conduct. So I'm saying the judge was definitely on notice that this was about . . . not about restitution based on the written objection, but it's certainly he was put on notice here in sentencing that this was a guideline objection as well, so I'm making that argument. Mr. Pierce said it was pretty clear that the government was proceeding at this case under a FDIC insured theory. I just want to read one paragraph from what the AUSA told jury panel during jury selection. This is from page 676 of the record. It's important to note that what we have here is essentially just a mortgage fraud case. I mean, and that's . . . and I can . . . the record is replete with that. This was prosecuted as a mortgage fraud case. So I'll just leave that at that. Let's see if we have one other . . . Mr. Pierce made the point that there are . . . I cited a Second Circuit case for the proposition that the in preparation for language fit both a . . . is attached to A2 and A1, and there is a Seventh Circuit case against that. Mr. Pierce said there are lots of cases in the Fifth Circuit that hold that it doesn't go with A2. If he's right, great. I couldn't find any. Otherwise, I'd have put him in there. I see him out of time. Thank you. Thank you, sir. We have the argument. He's court-appointed. Oh, you're court-appointed. Thank you, sir, for your service. Thank you.